OHIO ASSOCIATION OF PUBLIC SCHOOL EMPLOYEES, CHAPTER NO. 672, ET AL., APPELLANTS, *v.* TWIN VALLEY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION ET AL., APPELLEES.

[Cite as Ohio Assn. of Pub. School Emp. *v.* Twin Valley Local School Dist. Bd. of Edn. (1983), 6 Ohio St. 3d 178.]

(No. 82-1741—Decided August 10, 1983.)

Mr. Robert G. Byrom and Mr. John F. Lenehan, for appellants.

Means, Bichimer, Burkholder & Baker Co., L.P.A., Mr. Nicholas A. Pittner and Mr. Matthew DeTemple, for appellees.

*Per Curiam.*  The issue presented for review is whether the provisions of R.C. 3319.081 (B) and 3319.082 preclude school districts from reducing on a nonuniform basis the number of hours worked by nonteaching personnel who are employed under hourly contracts. The resolution of this appeal necessitates a construction of the word "salary" as utilized in the aforementioned statutory provisions.

R.C. 3319.081 provides in relevant part:

"(A) Newly hired regular nonteaching school employees, *including regular hourly rate and per diem employees,* shall enter into written contracts for their employment which shall be for a period of not more than one year. If such employees are rehired, their subsequent contract shall be for a period of two years.

"(B)  After the termination of the two-year contract provided in division (A) of this section, *if the contract of a nonteaching employee is renewed,* the employee shall be continued in employment, and *the salary provided in the contract may be increased but not reduced unless such reduction is a part of a uniform plan affecting the nonteaching employees of the entire district."* (Emphasis added.)

R.C. 3319.082 provides:

"In all school districts wherein the provisions of Chapter 124. of the Revised Code do not apply, each board of education shall cause notice to be given annually not later than the first day of July to each nonteaching school employee, who holds a contract valid for the succeeding school year, as to the *salary* to be paid such school employee during each year. *Such salary shall not be lower than the salary paid during the preceding school year unless such reduction is a part of a uniform plan affecting the nonteaching employees of*

*the entire district.* This section does not prevent increases of salary after the board's annual notice has been given." (Emphasis added.)

From similar facts, the court of appeals in the case at bar came to a conclusion diametrically opposed to the holding of the court of appeals in *Balduff, supra.* Relying exclusively on its prior decision in *Taulbee* v. *Bd. of Edn.* (May 13, 1981), No. 877, unreported, the court below concluded that the provisions of R.C. 3319.081 (B) and 3319.082, prohibiting salary reductions affecting nonteaching personnel absent uniform reductions on a systemwide basis, are inapplicable to nonteaching personnel employed on an hourly basis.

In reaching its decision, the court of appeals in *Taulbee* sought to determine the plain and ordinary meaning of the word "salary." The court first resorted to the definition contained in Black's Law Dictionary (5 Ed. 1979), which states: "A stated compensation paid periodically as by the year, month, or other fixed period, in contrast to wages which are normally based on an hourly rate." The court reasoned that the accepted definition of "salary" in everyday business is that the term refers to payments for fixed periods of employment, whereas one employed on an hourly basis is assured of only a fixed rate per hour.

Next, the court examined various provisions of R.C. Chapter 3319. For instance, the court reviewed R.C. 3319.081 (A) and reasoned that the General Assembly was cognizant of the need for school boards to employ hourly and per diem employees, as well as salaried employees. The court then examined R.C. 3319.141 which provides paid sick leave for "part-time, seasonal, intermittent, per diem, or hourly [nonteaching employees]." In addition, the court reviewed R.C. 3319.087 which provides all regular nonteaching school employees a minimum number of paid holidays annually for which they are entitled to receive "their regular salary or their regular rate of pay" regardless of "whether [the employee is] salaried or compensated on an hourly or per diem basis."

The court concluded that the General Assembly adequately demonstrated its ability to distinguish between employees who are compensated hourly, and those employees whose contracts specify a stated salary. Since the General Assembly only specified "salaried" employees under R.C. 3319.081 (B) and 3319.082, the court reasoned that appellants are not entitled to the protections provided by those statutory provisions.

As in the case at bar, the plaintiffs in *Balduff, supra,* were regular nonteaching school employees who received hourly wage increases, but whose contract with the board of education remained silent as to a minimum number of hours to be worked. When the plaintiffs' working hours were reduced, they earned less money than in the previous contractual year.

In contrast to the decision in *Taulbee,* the court of appeals in *Balduff* held that the provisions of R.C. 3319.081 (B) and 3319.082 are applicable to regular nonteaching school personnel employed on an hourly basis. As such, the court concluded that hourly work reductions which effectively reduce income below that earned during the previous contractual year are prohibited

unless the working hours of all regular nonteaching school employees within the district are uniformly reduced. In support of this conclusion, the court relied upon *Gates* v. *Bd. of Edn. of River Local School Dist.* (1966), 8 Ohio App. 2d 76 [37 O.O.2d 84], affirmed (1967), 11 Ohio St. 2d 83 [40 O.O.2d 91], wherein it was stated, at page 78, that "[t]he legislative intent in enacting Section 3319.081 * * * was to provide employment security to the employees covered by this statute."

In Ohio, it is a settled principle of statutory construction that words used in a statute are to be given their plain and ordinary meaning, unless the legislative intent indicates otherwise. *Lake County National Bank* v. *Kosydar* (1973), 36 Ohio St. 2d 189 [65 O.O.2d 404]; *In re Appropriation for Hwy. Purposes* (1969), 18 Ohio St. 2d 214 [49 O.O.2d 242].

In *Lake County National Bank, supra,* at 192, we recognized at least two methods whereby a court may ascertain whether a word used within a statute carries a meaning other than its plain and ordinary meaning: "One is by the use of an explicit statutory definition of the word * * *." None exists, however, in the instant case. "[T]he other is by ascertaining that an adherence to the plain and ordinary meaning of the word would defeat the legislative purpose in the enactment of the statute. In the latter case, 'the strict letter of an act must * * * yield to its evident spirit and purpose * * *.' *Fleischmann Construction Co.* v. *United States* (1926), 270 U.S. 349, 360. See, also, *Cochrel* v. *Robinson* (1925), 113 Ohio St. 526 * * *."

Additionally, this court has recognized that the cornerstone of statutory construction is legislative intention. As stated in *State, ex rel. Francis,* v. *Sours* (1944), 143 Ohio St. 120, 124 [28 O.O. 53], "[i]n determining that intention courts look to language employed and *to the purpose to be accomplished.*" (Emphasis added.)

Finally, it is well-established that " '[i]n ascertaining the legislative intent of a statute, "It is the duty of this court to give effect to the *words used* [in a statute], not to delete words used *or to insert words not used.*" ' " *Dougherty* v. *Torrence* (1982), 2 Ohio St. 3d 69, 70, citing *Bernardini* v. *Bd. of Edn.* (1979), 58 Ohio St. 2d 1, 4 [12 O.O.3d 1].

The court of appeals below and the court in *Balduff* have digressed, somewhat, from the aforementioned rules of statutory construction. The judgment of the court below disregards the General Assembly's intent when it was concluded that appellants' contracts do not receive the protections afforded by R.C. 3319.081 (B) and 3319.082.

Specifically, R.C. 3319.081 (A) requires that "[n]ewly hired regular nonteaching school employees, *including regular hourly rate* * * * *employees*" shall be extended one-year written employment contracts. Upon rehiring these employees, their subsequent contracts must be for a period of two years. R.C. 3319.081 (B) begins with a reference to the "two-year contract provided in division (A)" which by necessary implication must include those contracts entered into by "regular hourly rate * * * employees." The

section then prohibits salary reductions, unless such reductions uniformly affect nonteaching employees throughout the entire school district.

R.C. 3319.082 repeats the prohibitions against salary reductions previously set forth under R.C. 3319.081 (B), as well as providing that *each* nonteaching school employee holding a valid contract for the succeeding school year be notified not later than the first day of July as to his or her salary to be paid for the upcoming school year.

In view of the fact that the purpose of R.C. 3319.081 is to provide employment security to regular nonteaching school employees, *Gates, supra,* we do not perceive the use of the term "salary" within R.C. 3319.081 (B) and 3319.082 as excluding those employees who are paid on an hourly basis from the pay reduction protections, the July notification requirements, as well as the other contractual provisions contained within these statutes. This conclusion does not, however, end our inquiry, for the question remains to what extent are appellants' wages protected.

The court of appeals in *Balduff* concluded that not only are the hourly wages of regular nonteaching school employees protected from nonuniform reductions but, so too are the number of hours previously worked by these employees. We are unable to agree with this conclusion as to do so would necessitate the insertion of words not used within the statute. *Dougherty, supra.* Moreover, nowhere can it be found that the subject statutory provisions extend assurances to appellants that they are to be employed for a specific number of hours from year to year.

We therefore conclude that the General Assembly's intent when enacting R.C. 3319.081 (B) and 3319.082 was to equate the term "salary" with "rate of pay." See, *e.g.,* R.C. 3319.087 which provides a minimum number of paid holidays for regular nonteaching school employees who are entitled to receive *"their regular salary or their regular rate of pay"* regardless of "whether [the employees are] salaried or compensated on an hourly or per diem basis." (Emphasis added.) Under this construction, regular nonteaching school employees compensated hourly are entitled to the protections afforded by R.C. 3319.081 (B) and 3319.082. In other words, hourly employees are entitled to be employed under one-year, and then two-year contracts; compensation notices must be received not later than the first day of July, annually; and hourly wages cannot be reduced unless such reductions are part of a uniform plan affecting all regular nonteaching employees within the school district. However, unless otherwise contractually specified, the number of hours to be worked does not receive a statutory guarantee.

The record conclusively demonstrates that for the 1980-1981 school year, appellants' hourly wages actually increased over those earned during the previous school year. Accordingly, and for the reasons stated herein, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., concurs in judgment only.