OPINION
Plaintiffs-appellants, Ina P. Littrell, individually and as administrator of the estate of her deceased husband, John Littrell, Jr., Linda Littrell, as guardian of Ina's children, Dennis E. and Suzanne K. Littrell, and Naomi K. Gadberry, as administrator of the estate of Stella Pratt, deceased, appeal the decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Nancy Wigglesworth, as administrator of the estate of Jeffrey Wigglesworth, deceased, Colonial Penn Insurance Company, Westfield Insurance Company, Preferred Risk Group/Preferred Risk Mutual Insurance Company, and Allstate Insurance Company.[1]
On February 16, 1996, John Jr., Ina, Dennis, Suzanne, and Ina's mother, Stella, were occupants in a minivan co-owned and co-insured by Stella and Cheryl Pratt. The family was traveling on Tylersville Road in Union Township, Butler County, Ohio, when the minivan was involved in a head-on collision with Jeffrey's vehicle. Jeffrey was at fault. Due to the accident, John Jr., Stella, and Jeffrey died. Ina suffered serious injuries, and Dennis and Suzanne suffered minor injuries.
Jeffrey was insured by State Farm Mutual Automobile Insurance Company ("State Farm") with liability coverage of $100,000 per person/$300,000 per accident ("100/300") and a $1 million umbrella liability policy. The Pratt minivan was insured by Colonial Penn with underinsured ("UIM") coverage of 100/300. Ina was insured by Westfield with UIM coverage of $500,000 per accident. All five occupants of the Pratt minivan were considered "insureds" under the Colonial Penn and Westfield policies.
On February 9, 1998, appellants filed in the trial court a complaint against appellees seeking compensatory damages and punitive damages from Jeffrey's estate and UIM proceeds from Colonial Penn and Westfield on behalf of Ina, Dennis, Suzanne, John Jr. and Stella's estates, and all R.C. 2125.02 wrongful death beneficiaries of John Jr. and Stella. The complaint also sought UIM proceeds for James Littrell ("James"), John Jr.'s brother, who had UIM insurance coverage of 100/300 with Preferred Risk. The complaint also sought UIM proceeds for Ernie Pratt, Jr. ("Ernie Jr."), Stella's grandson, who had UIM coverage of 25/50 with Allstate. The complaint listed "John Doe" insurance carriers, defined as UIM carriers insuring unnamed wrongful death beneficiaries of John Jr. and Stella.
On November 4, 1998, Allstate filed a motion for summary judgment, arguing that Stella was not an "insured," defined as a resident relative, under Ernie Jr.'s UIM policy with Allstate. It was conceded that Stella was not a resident of Ernie Jr.'s household. On December 1, 1998, Preferred Risk filed a motion for summary judgment, arguing that John Jr. was not an "insured," defined as a resident relative, under James' UIM policy with Preferred Risk. It was conceded that John Jr. was not a resident relative of James' household. Both motions contended that pre-Senate Bill 20 ("S.B. 20") law, which would render these provisions ineffective, had been superseded by the amendment of R.C. 3937.18(A)(2) by S.B. 20, effective Oct. 24, 1994.
On December 9, 1998, Colonial Penn filed a motion for summary judgment, arguing that pursuant to R.C. 3937.18(A)(2), as amended by S.B. 20, UIM coverage was not available to appellants because Jeffrey's liability coverage with State Farm, which totaled $1.3 million, was significantly more than the Colonial Penn UIM policy limits of 100/300. On January 29, 1999, appellants filed their response to Colonial Penn's motion for summary judgment, arguing that their claims for UIM coverage were not barred by the amendment of R.C. 3937.18(A)(2). That same day, appellants also filed their responses to Allstate and Preferred Risk's motions for summary judgment, arguing that the non-resident relative exclusions in the policies were ineffective because S.B. 20 did not supersede prior case law.
A hearing on the motions for summary judgment was held, and on April 22, 1999, the trial court filed a decision and entry granting summary judgment in favor of Allstate, Preferred Risk, and Colonial Penn. The trial court found that pre-S.B. 20 case law, which held that wrongful death beneficiaries as defined in R.C. 2125.02 could not be excluded from recovery under UIM policies, had been superseded by the enactment of S.B. 20. Thus, the non-resident relative exclusions were valid. James and Ernie Jr. could not recover under their policies, because no "insured" covered by either policy had suffered bodily injury. The trial court further found that R.C. 3937.18(A)(2) was amended by S.B. 20 to allow a policy limit to policy limit comparison when determining whether UIM proceeds may be recovered. As Jeffrey's liability coverage with State Farm was significantly more than the Colonial Penn policy limit, there could be no UIM recovery. Appellants appeal this decision and entry.
On May 26, 1999, Westfield filed, with leave of court, a motion for summary judgment, setting forth the same argument that Colonial Penn had included in its motion for summary judgment. On June 8, 1999, appellants filed their response to the motion for summary judgment, raising arguments identical to those included in their response to Colonial Penn's motion for summary judgment.
On July 30, 1999, the trial court filed a decision and entry granting summary judgment to Westfield. In its decision, the trial court found that UIM recovery could not be had because Jeffrey's liability coverage was greater than the Westfield UIM policy limit. Appellants appeal this decision.
This court consolidated the two appeals, and appellants raise two assignments of error in the consolidated appeals. For purposes of clarity, we address the assignments of error in reverse order.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEES [sic] ALLSTATE INSURANCE COMPANY AND PREFERRED RISK MUTUAL INSURANCE COMPANY BECAUSE OHIO REVISED CODE § 3937.18(A), AS AMENDED EFFECTIVE OCTOBER 24, 1994, AND APPLICABLE TO THIS CLAIM, PROVIDES THAT UNDERINSURANCE COVERAGE SHALL PROVIDE PROTECTION FOR INSUREDS AGAINST LOSS SUFFERED BY AN INSURED BY REASON OF A DEATH.
 In the second assignment of error, James and Ernie Jr. contend that they are entitled to recover under their respective UIM policies with Preferred Risk and Allstate, because they are R.C. 2125.02 wrongful death beneficiaries of parties killed in the accident. They argue that under Sexton v. State Farm Mut. Auto. Ins. Co. (1982), 69 Ohio St.2d 431, and State Farm Auto. Ins. Co. v. Alexander (1992), 62 Ohio St.3d 397, the non-resident relative exclusions are invalid and do not preclude them from recovery under the UIM policies.
Pursuant to Civ.R. 56(C), the trial court may grant summary judgment where there is no genuine issue as to any material fact.Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344,346. Summary judgment will be granted if reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made. Id. An issue of fact exists when the relevant factual allegations in the pleadings, affidavits, depositions or interrogatories are in conflict. Linkv. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741. A dispute of fact is "material" if it affects the outcome of the litigation, and is "genuine" if demonstrated by substantial evidence going beyond the allegations of the complaint. Burkes v. Stidham
(1995), 107 Ohio App.3d 363, 371.
In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482,485. Further, "the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." Id., citing Turner v. Turner
(1993), 67 Ohio St.3d 337, 341. In reviewing the moving party's motion, a trial court should award summary judgment with caution.Welco, 67 Ohio St.3d at 346. Nevertheless, a summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essential elements of his claim. Id.
In determining whether the plaintiff demonstrated the elements of his claim, an appellate court must independently review the record to determine if summary judgment was appropriate. Therefore, an appellate court affords no deference to the trial court's decision when making its own decision.Beardsley v. Manfredi Motor Transit Co. (1994), 97 Ohio App.3d 768,769.
The Preferred Risk and Allstate policies contain similar language defining who qualifies as an "insured." The Preferred Risk policy which insured James states, in Part C:
 A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured [/under-insured] motor vehicle" because of "bodily injury":
1. Sustained by an "insured"; and
2. Caused by an accident.
* * *
B. "Insured" as defined in this Part means:
1. You or any "family member."
"Family member" is earlier defined in the policy as
 A person related to you by blood, marriage, or adoption who is a resident of your household. This includes a ward or a foster child.
 Appellants concede that John Jr. was not an "insured" as defined in the Preferred Risk policy.
The Allstate policy which insured Ernie Jr. contained similar language. Part VI, Underinsured Coverage, states:
 We will pay damages for bodily injury or property damage which an insured person is legally entitled to recover from the owner or operator of an underinsured vehicle.
* * *
 Insured Persons
(1) You and any resident relative
* * *
 Definitions
* * *
 (2) "Resident" — means the physical presence in your
household with the intention to continue living there. Unmarried dependent children, while temporarily away from home will be considered residents if they intend to continue to live in your household. (Emphasis in original.)
 It is conceded that Stella was not an "insured" as defined in the Allstate policy.
R.C. 3937.18(A)(2), which governs UIM coverage, states:
 Underinsured motorist coverage * * * shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.
 Sexton, 69 Ohio St.2d at paragraph two of the syllabus, and Alexander, 62 Ohio St.3d at syllabus, held that wrongful death beneficiaries, as defined in R.C. 2125.02, may recover under their own UIM policies under R.C. 3937.18(A)(2) for losses suffered as a result of the death of a non-insured party. Subsequent to these cases, the General Assembly enacted S.B. 20, which amended R.C. 3937.18-(A), with the intent of superceding pre-S.B. 20 case law regarding R.C. 3937.18(A). In reaching its decision in the instant case that the non-resident relative exclusions were valid, the trial court relied upon recent appellate court decisions holding that R.C. 3937.18(A) was amended by S.B. 20 to make effective such exclusions and that Sexton and Alexander were superseded by the enactment of S.B. 20. See Kocel v. Farmers Ins. of Columbus, Inc. (Mar. 7, 1996), Cuyahoga App. No. 69058, unreported, discretionary appeal not allowed, 76 Ohio St.3d 1495, appeal dismissed (1997), 79 Ohio St.3d 1235, reconsideration denied, 80 Ohio St.3d 1450
. See, also, Newkirk v. State Farm Mut. Ins. Co.
(June 1, 1999), Preble App. No. CA98-05-005, unreported, discretionary appeal allowed, 87 Ohio St.3d 1420, and King v. Western Reserve Mut. Cas. Co. (Mar. 15, 1999), Monroe App. Nos. 805, 806, and 807, unreported, motion to certify conflict allowed, 86 Ohio St.3d 1441.
On February 16, 2000, during the pendency of the present appeals, the Supreme Court of Ohio decided Moore v. State Auto.Mut. Ins. Co. (2000), 88 Ohio St.3d 27. In Moore, the Supreme Court held
 R.C. 3937.18(A)(1), as amended by [S.B. 20], does not permit an insurer to limit uninsured motorist ["UM"] coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer.
 Id. at syllabus. The court found that R.C. 3937.18(A)(1) was ambiguous as to whether an insurer could limit UM coverage to only accidents in which the "insured," as defined in the policy, directly suffers bodily injury. Thus, Sexton andAlexander were not superseded by S.B. 20. Id. at 31.
Although the instant case concerns UIM, not UM, coverage, the relevant language in the two subsections of R.C. 3937.18(A) is identical. In its effect, Moore has reversed the holdings ofKocel, Newkirk, and King. We must therefore find that the trial court erred in holding that James and Ernie Jr. were not eligible for recovery under their respective UIM policies for the deaths of John Jr. and Stella. Appellants' second assignment of error is well-taken.
Assignment of Error No. 1:
 IN A CASE WHERE THERE ARE MULTIPLE CLAIMANTS, A TRIAL COURT ERRS WHEN IT MERELY COMPARES THE INSURANCE POLICY LIMITS FROM THE TORTFEASOR'S POLICY WITH THE POLICY LIMITS OF THE INSURED'S UIM POLICY.
 In their first assignment of error, appellants contend that the trial court should have compared the UIM policy limits against the amounts individually received by appellants, rather than the $1.3 liability coverage limit of Jeffrey's policy with State Farm. Appellants argue that Motorist Mut. Ins. Co. v. Andrews (1992), 65 Ohio St.3d 362, the pre-S.B. 20 case mandating UIM coverage offset by only those amounts actually received from the tortfeasor's liability coverage, and not the liability policy limit, is effective and governs this case.
As stated in the previous assignment of error, our review of the trial court's grant of summary judgment on this issue is denovo. Beardsley, 97 Ohio App.3d at 769. Because the trial court should have considered not only the Colonial Penn and Westfield policies in its decision, but the Preferred Risk and Allstate policies as well, we review whether all four UIM carriers may offset their relevant policy limits by the $1.3 million liability coverage of Jeffrey's State Farm policy.
All four UIM policies contain offset provisions of differing language but similar effect. The Colonial Penn policy provides in its "Coverage Against Uninsured[/Underinsured] Motorists:"
 What Is An Uninsured[/Underinsured] * * * Highway Vehicle
A highway vehicle is a land motor vehicle or trailer.
A highway vehicle is uninsured[/underinsured] if:
* * *
 • It is underinsured. A highway vehicle is underinsured if:
 • one or more liability bonds or policies apply to it at the time of the accident, AND
• the limits of all liability bonds and policies that apply are:
 • at least the amounts set by the financial responsibility law of the state in which an insured auto is usually kept, but
• less than the limit of liability for this coverage.
* * *
 Limits of Coverage The limits of Coverage Against Uninsured-[/Underinsured] motorists are shown on your Declarations page. These limits apply separately to each insured person. The applicability of this insurance to more than one insured person does not, however, increase the limits of coverage.
 There are two limits of coverage. The amount shown on your Declarations Page for "Each Person" is the most We'll pay for all damages because of bodily injury to one person caused by any one accident including all damages sustained by anyone else as a result of that bodily injury. The amount shown on your Declarations Page for "Each Accident" is, subject to the limit for each person, the most We'll pay for all damages as a result of any one accident, no matter how many people are injured, regardless of the number of insureds, claims made, or premiums shown on the Declarations Page.
 The highest limits of coverage (both for "Each Person" and "Each Accident") shown on your Declarations Page for any one
vehicle is the most We'll pay under this coverage for claims arising from any one accident regardless of the number of insureds, claims made, vehicles or premiums shown on the Declarations Page.
 Reduction of Claim payments When Alternative Payments Are Made
* * *
 We will reduce any payment under this coverage by the amount paid or payable by or on behalf of anyone responsible for the bodily injury. (Emphasis in original.)
 The Westfield policy provides, in its amendment of policy provisions to conform to Ohio law:
 UNDERINSURED MOTORISTS
* * *
We will pay this coverage only if:
 A. The limits of liability under any applicable bodily injury bonds or policies have been exhausted by payment of judgments or settlements.
* * *
 "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily liability bond or policy applies at the time of the accident, but its limit for bodily injury liability must be:
 A. Less than the limit of liability for this coverage; or
 B. Reduced by payments to others injured in the accident to less than the limit of liability for this coverage.
* * *
 LIMIT OF LIABILITY
* * *
 A. If the Declarations indicates a single limit of liability for "each accident" for Uninsured/Underinsured Motorist Coverage, the limit of liability shown in the Declarations is our maximum liability is our maximum limit of liability for all damages for bodily injury resulting from any one accident for either Uninsured Motorist Coverage or Underinsured Motorist coverage. This is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
* * *
 C. With respect to coverage provided for damages an insured is entitled to recover from the owner or operator of an underinsured motor vehicle, the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. (Emphasis in original.)
The Preferred Risk policy provides, in Part C:
 The [tortfeasor's] liability for these [compensatory] damages must arise out of the ownership, maintenance, or use of the "uninsured[/underinsured] vehicle." We will pay under this coverage only if 1. or 2. below applies:
 1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements[.]
"Uninsured[/underinsured] motor vehicle" is defined to include:
A land motor vehicle or trailer of any type:
* * *
 2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the limit of liability of this coverage.
 Part C includes provisions limiting the extent of Preferred Risk's liability to pay UIM coverage, under "Limit of Liability:"
 A. The limit of liability shown on the Declarations for each person for Uninsured[/Under-insured] Motorist Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured[/Underinsured] Motorist Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
 B. With respect to coverage under Section 2. of the definition of "uninsured[/underinsured] motor vehicle," limit of liability shall be reduced by all sums paid because of "bodily injury" by or on behalf of persons or organizations who may be legally responsible.
 The Allstate policy provides in Part VI, Underinsured Coverage:
 An underinsured motor vehicle is:
* * *
 (2) a motor vehicle or trailer which has liability protection in effect and applicable at the time of the accident but less than the applicable damages the insured person is legally entitled to recover.
* * *
 Limits of Liability
The coverage limit shown on the declarations page for:
 (1) "each person" is the total limit for all damages arising out of bodily injury to one person in any one motor vehicle accident.
 (2) "each accident" is the total limit for all damages arising out of bodily injury to two or more persons in any one motor vehicle accident. This limit is subject to the limit for "each person".
* * *
 These limits are the maximum Allstate will pay for any one motor vehicle accident regardless of the number of:
 (1) claims made;
 (2) vehicles or person shown on the declarations page; or
 (3) vehicles involved in the accident.
* * *
Damages payable will be reduced by:
 (1) all amounts paid by the owner or operator of an underinsured motor vehicle or anyone else responsible. This includes all sums paid under the bodily injury liability coverage * * * of this or any other auto policy.
* * *
 We are not obligated to make any payment under this coverage until after the limits of all liability protection in effect and applicable at the time of the accident have been exhausted by payments of judgments or settlements. (Emphasis in original.)
The four UIM policies provide that a vehicle is "underinsured" when the liability coverage insuring that vehicle is less than the relevant UIM policy limit. In the case of Colonial Penn, that policy limit is the $300,000 per accident limit, as multiple claims are being made for injuries to multiple insureds arising out of a single accident. The same is true of the $500,000 Westfield UIM policy limit. These two policies are applicable to all five insureds present in the minivan and John Jr. and Stella's wrongful death beneficiaries. The Preferred Risk per person UIM policy limit of $100,000 is applicable to James' claim because he seeks to recover under that policy only for his injury suffered as a result of John Jr.'s death. Likewise, the Allstate per person UIM policy limit of $25,000 is applicable to Ernie Jr.'s claim because he seeks to recover under that policy only for Stella's death.
The four UIM policies provide by their terms that any UIM coverage is available only when the tortfeasor's liability coverage is less than the UIM policy limit. In other words, as stated in the Colonial Penn policy, any UIM proceeds that the insured may otherwise be entitled to must be reduced by the amounts either paid by or payable under the tortfeasor's liability coverage. If the policies' literal terms are given effect, this means that the policies must each be offset by the $1.3 million liability limit coverage in State Farm's policy insuring Jeffrey. In such case, the liability coverage would offset each of the UIM policy limits by a substantial amount, precluding any recovery of the UIM coverages.
We now turn to an analysis of the effect of the amendment of R.C. 3927.18(A)(2) by S.B. 20. When interpreting a statute, "we must determine the intent of the legislature in enacting R.C.3937.18(A) and construe that statute in a manner that reflects that intent." Moore, 88 Ohio St.3d at 31. Because R.C.3937.18(A) is a remedial statute, "it must be liberally construed to give effect to the legislative purpose." Id. In determining legislative intent "it is the duty of this court to give effect to the words used (in a statute), not to delete words or to insert words not used." Id. at 32. In its application, the statute should be construed according to the ordinary meaning of the words used, and it should produce the result intended by the statute's evident purpose. Ohio Assn. of Pub. School Employees v. TwinValley Local School Dist. (1983), 6 Ohio St.3d 178, 181.
Former R.C. 3937.18(A)(2), as it existed prior to S.B. 20, provided:
 Underinsured motorist coverage, * * * shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits of the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
 The Supreme Court of Ohio interpreted the importance of this section in Andrews, wherein the court held:
 When determining whether a motorist is underinsured within the meaning of R.C. 3927.18(A)(2), the amount actually available for payment under the tortfeasor's liability insurance policy must be compared to the underinsured motorist coverage limits. If the amount available for payment is less than the insured's underinsured policy limits, then the insured is entitled to underinsured motorist coverage.
 65 Ohio St.3d 362, syllabus. In defining the term "available for payment," as included in the first sentence of R.C. 3937.18(A)(2), the court focused upon those sums which are actually paid to the insured parties. Thus, in Andrews, where the insureds under the UIM policy received no money from the tortfeasor's liability coverage, the tortfeasor was deemed underinsured, and the insureds could recover their full UIM policy limit. Id. at 367.
The result in Andrews was unquestionable in light of the language of former R.C. 3937.18(A)(2). Although the court apparently failed to recognize the fact, a definition of the term "available for payment" for determining how an insurer may offset amounts received by the insured party from the tortfeasor was provided in the statute itself. The final sentence of former R.C.3937.18(A)(2) read:
 The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. (Emphasis added.)
 Thus, when an insured was entitled to recover under the UIM policy, the UIM carrier could offset its policy limits by only "those amounts actually recovered" from the tortfeasor's liability carrier. Because the insureds in Andrews received no money from the tortfeasor's liability coverage, their UIM carrier could not offset the UIM coverage by any amount. 65 Ohio St.3d at 367.
S.B. 20 radically altered the language of R.C. 3937.18(A)(2). With the enactment of S.B. 20, the section now reads:
 Underinsured motorist coverage * * * shall provide protection for insureds * * * against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist overage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
It must be noted that S.B. 20 did not alter the term "available for payment" as included in the first sentence of the section. But S.B. 20 changed the remaining parts of the section. First, the General Assembly added the sentence
 Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident.
 As noted in Section 7 of the General Assembly's intent following S.B. 20, this sentence was added to expressly supersede the holding of Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, "relative to the application of underinsured motorist coverage in those situations involving accidents where the tortfeasor's bodily injury liability limits are greater than or equal to the limits of the underinsured motorist coverage."
Second, and more compelling, the General Assembly dramatically altered the language of the final sentence of R.C.3937.18(A)(2) to read:
 The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. (Emphasis added.)
 The import of this change cannot be underestimated. As noted above, the final sentence in former R.C. 3937.18(A)(2) provided clear direction in determining that any offsets of UIM coverage were to be done according to "amounts actually recovered" by the insured. That language has been removed, and the statute now provides that UIM coverage is to be offset by "those amounts available for payment," not necessarily "actually recovered," under the tortfeasor's policy.
Had the General Assembly intended that offsets were to be according to those amounts the insured receives, in hand, from the tortfeasor's liability coverage, there would have been no need to change the language of this final sentence. Instead, the General Assembly rewrote the sentence, and the intent of the General Assembly is clear — offsets must now to be done through a policy limit to policy limit comparison, superseding the holding ofAndrews. Any other interpretation of S.B. 20 would render meaningless the substantial changes made in the statute.
Other courts have reached this same conclusion. Smock v.Hall (Jan. 22, 1999), Geauga App. No. 97-G-2090, unreported, discretionary appeal allowed, 86 Ohio St.3d 1406, appeal dismissed (2000), 87 Ohio St.3d 1250; Stickney v. State Farm Mut. Auto. Ins.Co. (Oct. 19, 1998), Richland App. No. 98 CA 7, unreported, discretionary appeal allowed (1999), 85 Ohio St.3d 1451; King v.Western Reserve Group (1997), 125 Ohio App.3d 1, discretionary appeal not allowed (1998), 81 Ohio St.3d 1502. As stressed inKing:
 We note that the "available for payment" language [in the final sentence] was introduced by Senate Bill 20 and that in the pre-amended version of the statute, the set off provision allowed the insurer to deduct "those amounts actually recovered." Hence, the General Assembly has expressed its intent to expand the benefits to an insurer under the set off provision to amounts available to, but not necessarily recovered by, an insured.
 Thus, where the tortfeasor's liability coverage is equal to or greater than the insureds' UIM policy limit, the insureds may not recover under their UIM policy.
Only one district has to date found that Andrews was not superceded by S.B. 20. See Estate of Fox v. Auto-Owners Ins.
(June 12, 1998), Darke App. No. 1456, unreported. Unlike Smock,Stickney, King, or this court, the Fox court did not review the changes made by S.B. 20 in the last two sentences of R.C.3937.18(A)(2). Instead, that court focused solely upon the term "available for payment" as included in the first sentence of R.C.3937.18(A)(2). When reviewing the effect of S.B. 20 upon policy offsets, though, the first sentence is not dispositive of the issue. Rather, it is the changes in the final sentence which lead to but one conclusion — that Andrews has been superseded by S.B. 20.
We now turn to the facts of the instant case. Recovery under the Colonial Penn and Westfield UIM policies is sought for injuries to the five occupants of the car and their wrongful death beneficiaries. Under both policies, the covered "insureds," either as occupants of the minivan or as wrongful death beneficiaries, are the same individuals entitled to damages under the State Farm liability coverage. Because multiple claims are being made due to injuries to more than one person where all injuries and claims arise out of one accident, the per occurrence limits of the UIM policies are the relevant inquiry.[2]
In the instant case, "those amounts available for payment" are $1.3 million, the limit of Jeffrey's liability coverage. State Farm, the liability carrier, has offered to pay the entire $1.3 million. Thus, appellants are collectively entitled to and will collectively receive $1.3 million, far more than either the $300,000 per accident limit of the Colonial Penn policy, or the $500,000 per accident limit of the Westfield policy.
Thus, in the case of Colonial Penn and Westfield, the trial court correctly ruled that the UIM policy limits were completely offset by the State Farm liability coverage, which was significantly more than either policy limit. Similarly, James and Ernie Jr. are precluded from recovery under their respective UIM policies with Preferred Risk and Allstate because the State Farm liability coverage is significantly more than either policy limit.
The trial court correctly ruled that Colonial Penn and Westfield were not obligated to pay UIM coverage because the tortfeasor's liability coverage greatly exceeded either policy limit. Although the trial court erred in its finding that James and Ernie Jr. were not eligible for recovery under their own UIM policies, those policy limits are fully offset by the State Farm liability coverage. Thus, Preferred Risk and Allstate are not obligated to pay UIM coverage. Appellants' first assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] When referred to individually, individuals will be referred to by their first names. The defendant-appellee insurance companies will be individually referred to as "Colonial Penn," "Westfield," "Preferred Risk," and "Allstate." When referred to collectively, "appellants" and "appellees" will be used.
[2] See the earlier quoted language from the policies providing that all claims for injury to multiple insured in a single accident are collectively limited to the "per accident" limit of the policy.