DECISION AND JUDGMENT ENTRY
This is an appeal from the judgments of the Toledo Municipal Court wherein appellant, Richard A. Ross, was found guilty of violations of the Toledo Zoning Ordinance. For the following reasons we reverse appellant's convictions.
Initially we would like to emphasize that the constitutionality of the city's authority to regulate the rental of group homes in certain residential areas is not an issue in this case. It is well-settled that it is not unconstitutional to enact an ordinance prohibiting occupancy of a single-family dwelling by multiple unrelated persons.[1] Rather, the disputed issue in this case concerns the constitutionality of the wording within the city's ordinances that were drafted to regulate group rental houses.
Toledo Municipal Code ("TMC") 1167.01(28) states, "Group rental house within any single-family and two-family residence district subject to the standards and guidelines of this subsection." A "group rental house" is defined by TMC 1103.64 as follows:
 "`Group rental house' means four or more unrelated persons who do not constitute a `family' or a `functional family' as defined in this Code, living as a single housekeeping unit in which individual sleeping quarters may be secured by the occupants thereof, and in which the relationship among the members of the group rests primarily upon a cost-sharing arrangement and in which the common living arrangement or basis for the establishment of the housekeeping unit is of transient, limited or seasonal duration."
Appellant was charged with running ten group rental homes without a special use permit, the guidelines for which are set forth in TMC 1167.01(28), a violation of the Toledo Zoning Ordinance. Appellant allegedly rented each home in question to four or more college students. Appellant was convicted on six of the charges. A violation of the Toledo Zoning Ordinance is a minor misdemeanor.[2] Appellant was fined $100, plus costs, for each conviction.
On appeal, appellant raises the following assignments of error:
 "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS AS TMC § 1103.16, 1103.64, AND 1167.01(28) ARE UNCONSTITUTIONALLY VAGUE.
 "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS FOR FAILURE TO HOLD TRIAL WITHIN THE PERIOD OF TIME MANDATED BY OHIO REV. CODE § 2945.71.
 "III. THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29, CONTRARY TO LAW, WHERE THE STATE FAILED TO MEET ITS BURDEN WITH RESPECT TO EACH MATERIAL ELEMENT OF THE OFFENSE OF OPERATING GROUP RENTAL HOUSES."
A court must give effect to all words of a statute.[3] By giving effect to each applicable section of the Toledo Municipal Code, in order to convict appellant of improperly running a group rental house without a special use permit, the city must first establish the existence of a "group rental house." Hence, with respect to each property, the city must prove each element of the definition of "group rental house." Therefore, in order to convict appellant the city must prove beyond a reasonable doubt that:
 (1) appellant was renting a single or two-family house;[4]
 (2) appellant was renting to four or more unrelated persons who did not constitute a "family" or a "functional family" as defined by TMC 1103.16; and
 (3) those four or more unrelated persons were living as a single housekeeping unit in which
 (a) individual sleeping quarters may have been secured by the occupants thereof;
 (b) the relationship among the members of the group rested primarily upon a cost-sharing arrangement; and
 (c) the common living arrangement or basis for the establishment of the housekeeping unit was of transient, limited or seasonal duration.[5]
In his first assignment of error, appellant argues that the zoning ordinance is void for vagueness insofar as the terms defining a "group rental house" are unclear and provide landlords with little guidance as to the meaning of certain elements contained therein. The city interjects that appellant's constitutional challenge of the zoning ordinance is improperly raised insofar as it should have been raised administratively or through an action for declaratory judgment. We disagree. The cases relied upon by the city were not criminal matters and are therefore inapplicable.[6] Here, appellant was convicted criminally of violating the zoning ordinance and therefore properly raises due process arguments on appeal to this court.
Specifically, appellant argues that the following passages and terms are vague, thereby preventing persons from ascertaining what the law requires of them: "common living arrangement or basis for the establishment of the housekeeping unit is of transient, limited or seasonal duration"; "family" or "functional family"; and the phrase "in which the individual sleeping quarters may be secured by the occupants thereof."
In general, statutes must provide "`fair notice' to those who must obey the standards of conduct specified therein."[7] The void-for-vagueness doctrine therefore ensures that individuals can ascertain what the law requires of them.[8] "Under the so-called `vagueness doctrine,' statutes which do not fairly inform a person of what is prohibited will be found unconstitutional as violative of due process."[9] A statute is not unconstitutionally vague if it is (1) written so that a person of common intelligence is able to determine what conduct is prohibited, and (2) the statute provides sufficient standards to prevent arbitrary and discriminatory enforcement.[10]
A statute, however, need not be drafted with absolute precision to survive a void-for-vagueness challenge.[11] The doctrine also does not require that every detail regarding the procedural enforcement of a statute be contained therein.[12] Rather, a statute is not vague so long as any "reasonable and practical construction" can be given to its language.[13] In determining a statute's clarity, courts should apply commonly accepted tools of judicial construction and should indulge in every reasonable interpretation in favor of finding the statute constitutional.[14]
Taken in the order the terms appear in the code, we begin our analysis with the terms "family" and "functional family." TMC 1103.16 defines the term "family" and provides factors to consider in determining the meaning of "functional family." TMC 1103.16, Family, states as follows:
 "`Family' means either a `traditional family' or a `functional family' occupying a dwelling unit. A traditional family consists of one or more persons related to each other by birth or marriage. A functional family consists of two or more persons whose relationship is functionally equivalent to a traditional family, but who are not related by blood or marriage. A functional family must have a durable and distinct character with a demonstrable and recognizable bond characteristic of a cohesive unit.
 "In determining whether a group of unrelated persons is a functional family under the definition set forth above, the following factors, inter alia, may be considered. The presence or absence of any particular factor should be considered in light of any explanation therefor and in light of whether that presence or absence of the permanence and cohesiveness which is indicative of a functional family. The presence or absence of any single factor is not necessarily determinative of whether the unit constitutes a family:
 "(a) The sharing of social life such that the joint economic, social and cultural life is practiced on a permanent basis.
 "(b) The presence of minor dependent children regularly residing in the household and enrolled in local schools with one or more members of the household acting in the role of parents.
 "(c) The household has been living together as a unit for a year or more, whether in the current dwelling unit or other dwelling units.
 "(d) Whether the individuals use the address of the dwelling unit for the purposes of: voter registration; driver's license; motor vehicle registration; receipt of income by way of federal or other governmental program; legal communications or notices, including health insurance or other programmatic communications; and the payment of taxes.
 "(e) Evidence that different residents of the dwelling unit are away during the summer and that they have several as opposed to a single summer address is evidence that they are not a functional family.
"(f) Common ownership of furniture and appliances.
 "(g) Full time employment of some members of the household in the general community.
 "(h) Evidence that one or more individuals are claimed as dependents on the income tax return of individuals not resident in the household is evidence that the household is not a functional family.
 "Persons occupying a boarding house, hotel, lodging house, group rental house, or fraternity or sorority house, as herein defined do not constitute a functional family."
Appellant argues that because the ordinance specifies that the absence or presence of any single factor is not necessarily determinative of whether the unit constitutes a family, the section "blurs the meaning of `family'" and "leaves inspectors, judges, and juries blind to the ordinance's meaning," thus leaving the definition of "family" open to "subjective interpretations" and "arbitrary and discriminatory enforcement." We disagree. Obviously not every factor needs to be present because not every familial relationship is exactly the same. We find that the section here questioned provides constitutionally adequate guidelines for those charged with determining what is a "functional family." We further find that a person of common intelligence would be able to determine what constitutes a "family" or "functional family" within the definition of "group rental house," and, thus, would be capable of determining what conduct was prohibited.
With respect to the phrase, "in which the individual sleeping quarters may be secured by the occupants thereof," we also find that this phrase is not unconstitutionally vague. "Secured" is not defined in the Toledo Municipal Code. However, it is a well-settled principle of statutory construction that words used in a statute are to be given their plain and ordinary meaning, unless otherwise indicated.[15] Moreover, R.C. 1.42
states that "Words and phrases shall be read in context and construed according to the rules of grammar and common usage."
In Merriam-Webster's Collegiate Dictionary, "Secured" is defined as follows: "1 a: to relieve from exposure to danger * * * b: to put beyond hazard of losing * * * 2 * * * b: to make fast: SEAL — a door * * *."[16] Clearly, when read in context, the phrase, "in which the individual sleeping quarters may be secured by the occupants thereof," means that the bedrooms may be locked or otherwise barred. We find that a person of common intelligence would be able to determine what conduct was prohibited by this phrase of the ordinance.
We find, however, with respect to the phrase, "common living arrangement or basis for the establishment of the housekeeping unit is of transient, limited or seasonal duration," that the phrase is unconstitutionally vague, specifically with respect to the terms, "transient, limited, or seasonal duration." The Toledo Municipal Code does not define any of these terms. Therefore, we look to their plain and ordinary meaning to determine their effect in the context of this ordinance.
In Merriam-Webster's Collegiate Dictionary, "Transient" is defined, in pertinent part, as "1 a: passing esp. quickly into and out of existence * * * b: passing through or by a place with only a brief stay or sojourn * * *."[17] "Limited" is defined, in pertinent part, as "1 a: something that bounds, restrains, or confines b: the utmost extent * * * 3: LIMITATION * * *."[18] "Limit" is also defined as follows: "1: to assign certain limits to: PRESCRIBE * * * 2 a: to restrict the bounds or limits of * * *."[19]
"Seasonal" is defined, in pertinent part, as "1: of, relating to, or varying in occurrence according to the season * * * 2: affected or caused by seasonal need or availability * * *."[20] "Season" is defined, in pertinent part, as "1 a: a time characterized by a particular circumstance or feature * * * b: a suitable or natural time or occasion * * * c: an indefinite period of time * * * 2 a: a period of the year characterized by or associated with a particular activity or phenomenon * * * (1): a period associated with some phase or activity of agriculture (as growth or harvesting) * * * (3): the period normally characterized by a particular kind of weather * * * (5): a period in which a place is most frequentedb: one of the four quarters into which the year is commonly divided * * *."[21]
Given these definitions, the actual length of time that would be determined to be of "transient, limited, or seasonal duration" is entirely subjective. For instance, every person could have a different opinion concerning how quickly one would have to pass "into and out of existence" to constitute transient, or how long a "brief stay" actually is. Also, how long a period of time is prescribed by the term "limited"? Is a "limited duration" equal to a week, a month, a year, five years? Would a tenant's stay be considered "limited" if a lease was in effect or if the tenant was month-to-month? And, according to the definition of "seasonal," any period of time between an actual season (spring, summer, fall, winter), to an indefinite period of time could be considered to be of "seasonal duration."
Clearly, terms that require such subjective interpretation to determine their meaning are vague. It would be impossible for a person of common intelligence to be able to determine what conduct is prohibited, insofar as every person's interpretation of the meaning of "transient, limited, or seasonal" could vary so greatly. Moreover, because of the vague terms used, TMC 1103.64 allows for arbitrary and discriminatory application and enforcement of TMC 1167.01(28). Accordingly, we find that the language in TMC 1103.64, specifically, "common living arrangement or basis for the establishment of the housekeeping unit is of transient, limited or seasonal duration," does not provide fair notice to those who must obey the standards of conduct specified therein and does not provide constitutionally adequate guidelines for those charged with enforcing it.[22] We therefore find that TMC 1167.01(28) and TMC 1103.64 are unconstitutionally vague, violate the Due Process Clauses of the United States and Ohio Constitutions, and are thereby rendered void. As such, appellant's first assignment of error is found well-taken and his convictions and sentences based upon TMC 1167.01(28) are ordered reversed.
Additionally, we deny appellant's second and third assignments of error on the basis that they are rendered moot by our decision as to appellant's first assignment of error.
On consideration whereof, this court finds that appellant was prejudiced from having a fair trial and the judgment of the Toledo Municipal Court is reversed. This matter is remanded to the trial court for further proceedings consistent with this decision. Costs of this appeal to be paid by the city.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Richard W. Knepper, J., Melvin L. Resnick, J. and Mark L. Pietrykowski, P.J. CONCUR.
[1] See Village of Belle Terre v. Boraas (1974), 416 U.S. 1, 9.
[2] TMC 1105.03 and 1105.99.
[3] State v. Moaning (1996), 76 Ohio St.3d 126, 128.
[4] See TMC 1167.01(28).
[5] See TMC 1103.64.
[6] See Karches v. Cincinnati (1988), 38 Ohio St.3d 12, and Driscollv. Austintown Assoc. (1975), 42 Ohio St.2d 263.
[7] Baughman v. Ohio Dept. of Public Safety Motor Vehicle Salvage
(1997), 118 Ohio App.3d 564, 574.
[8] State v. Williams (2000), 88 Ohio St.3d 513, 532, citing, State v.Anderson (1991), 57 Ohio St.3d 168, 171.
[9] Baughman at 574, citing State v. Reeder (1985), 18 Ohio St.3d 25,26.
[10] Williams at 532, citing, Chicago v. Morales (1999), 527 U.S. 41,56-57, and State ex rel. Rear Door Bookstore v. Tenth Dist. Court ofAppeals (1992), 63 Ohio St.3d 354, 358. See also, Perez v. Cleveland
(1997), 78 Ohio St.3d 376, 378.
[11] Williams at 532; and Perez at 378.
[12] Perez at 378.
[13] Baughman at 574, citing, Lyle Constr., Inc. v. Div. ofReclamation (1987), 34 Ohio St.3d 22, 24.
[14] Perez at 378-379, citing, State v. Dorso (1983), 4 Ohio St.3d 60,61.
[15] Ohio Assn. of Pub. School Emp. v. Twin Valley Local School Dist.Bd. of Edn. (1983), 6 Ohio St.3d 178, 181.
[16] Merriam-Webster's Collegiate Dictionary (1996) 1056.
[17] Id at 1254.
[18] Id at 675.
[19] Id at 676.
[20] Id at 1053.
[21] Ibid.
[22] See Williams, supra.