**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Mack STEPHENSON, Defendant–Appellee.**

**No. 93–5662.**

United States Court of Appeals, Fourth Circuit.

Argued April 15, 1994.

Decided July 13, 1994.

**ARGUED:** Deborah Ann Ausburn, Asst. U.S. Atty., Asheville, NC, for appellant. Russell Lyway McLean, III, Waynesville, NC, for appellee. **ON BRIEF:** Jerry W. Miller, U.S. Atty., Asheville, NC, for appellant.

Before WILKINSON, Circuit Judge, BUTZNER, Senior Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

Reversed by published opinion. Judge WILKINSON wrote the opinion, in which Senior Judge BUTZNER and District Judge DOUMAR joined.

## OPINION

WILKINSON, Circuit Judge.

Here we must decide whether hunting on land within the statutory boundaries of the Great Smoky Mountains National Park but in the custody of the Tennessee Valley Authority constitutes a violation of 16 U.S.C. § 403h–3, which prohibits hunting "within the limits of said park." We hold that land within the statutory boundaries of the Park is presumptively "within the limits" of the Park and subject to Park laws. TVA's custody of land within the Park does not exempt such land from Park laws, because TVA's rights do not conflict with their enforcement.

We therefore reverse the district court's dismissal of the bill of information charging defendant with illegal hunting in the Park.

## I.

In December 1992, during North Carolina's bear hunting season, rangers from the Great Smoky Mountains National Park and officers from the North Carolina Wildlife Resources Commission set up a decoy bear on the north shore of Fontana Lake. Fontana Lake is a reservoir located at the south end of the Park and north end of the Nantahala National Forest. Although the National Park Service ("NPS"), which administers the Park, owns much of the land on the north shore of Fontana Lake, the decoy was placed on land below the shore's 1710–foot contour line, which is in the custody of the TVA.

On December 19, officers spotted defendant Mack Stephenson shooting at the decoy bear from a boat on Fontana Lake, and arrested him. In January 1993, the United States charged Stephenson with unlawfully hunting bear "within the special territorial jurisdiction of the United States, that is, the Great Smoky Mountains National Park," in violation of 16 U.S.C. § 403h–3. The district court ordered the bill of information dismissed for lack of jurisdiction. In so ordering, the court found that the National Park Service did not own the land on which the decoy bear was placed, and therefore that Stephenson's hunting activity was not "within" the Great Smoky Mountains Park as stated in the indictment and as required by the statute. The government now appeals.

## II.

### A.

■ Section 403h–3 provides that "[a]ll hunting or the killing, wounding, or capturing at any time of any wild bird or animal ... is prohibited *within the limits*" of the Great Smoky Mountains National Park. 16 U.S.C. § 403h–3 (emphasis added). Stephenson contends that his hunting activity did not occur "within the limits" of the Park because the decoy bear was placed on land owned by the TVA, not by the NPS. More

specifically, Stephenson argues that the boundaries of the Park should be determined by reference to fee simple ownership, and thus that land outside NPS' property line cannot be considered part of the Park.

We disagree. In our view, the language "within the limits of said Park" in § 403h–3 refers to the statutory boundaries of the Park established by Congress, not to property ownership lines. The statute governing the applicability of Park-related laws and regulations provides that

[s]ubject to valid existing rights, all lands within the boundaries of Great Smoky Mountains National Park, as redefined by sections 403k to 403k–2 of this title, hereafter shall be a part of the national park and shall be subject to all laws, rules, and regulations applicable to the national park.

16 U.S.C. § 403k–1. This statute creates the strong presumption that all lands within the statutory boundaries of the Park are subject to the laws governing the Park, including the hunting prohibition in § 403h–3. The primary inquiry in determining the applicability of Park laws to a given area must therefore be whether that area is within the statutory boundaries of the Park, not whether NPS holds title to the land in question.

The statutory provisions defining the Park's boundaries plainly designate the north shore of Fontana Lake as part of the Park. Section 403k defines "[t]he portion of the boundary of the [Park] that is common to and between" the Park and the various national forests that surround the Park. 16 U.S.C. § 403k. In particular, that section provides that the boundary between the Nantahala National Forest and the Park— i.e., the southern boundary for the Park— "shall follow the boundary of said forest as described in Proclamation Numbered 2185 of July 9, 1936." 16 U.S.C. § 403k(b). Proclamation 2185, in turn, describes the northern boundary of the forest as following the "meanders of the left bank of Tuckasegee River." Because the Tuckasegee River was flooded in the process of creating Fontana Lake, the southern boundary of the Park now runs through Fontana Lake. The spot where the decoy bear was placed here—the northern shore of Fontana Lake—lies north of the

Park's southern boundary line, and is thus well within the Park's statutory boundaries. Therefore, the area is presumptively "within the limits" of the Park and subject to Park laws.

### B.

■ Stephenson nonetheless maintains that the decoy bear was in an area not within the Park because that area falls under the "subject to valid existing rights" exception to § 403k–1. *See* 16 U.S.C. § 403k–1. Because the land below the 1710–foot contour line of the north shore of Fontana Lake is in the custody of the TVA, Stephenson argues, the bear was placed on land "subject to valid existing rights" of TVA that exempt it from NPS jurisdiction.

We find no merit in this argument. The land at issue here belongs to the United States, and Congress is free to designate which agency or agencies may exercise control over it. In 1946, Congress authorized the NPS to oversee the "[a]dministration, protection, improvement, and maintenance of areas, under the jurisdiction of other agencies of the Government, devoted to recreational use pursuant to cooperative agreements." 16 U.S.C. § 17j–2(b). In other words, Congress permits NPS to exercise jurisdiction over lands formally held by other federal agencies, pursuant to their mutual agreement. NPS entered into such an agreement with TVA in 1948. That agreement gave NPS "the right of access to and use of all lands of the United States in TVA's custody ... between the 1710–foot contour ... and low watermark on Fontana Lake for the purpose of constructing and maintaining thereon boating and recreational facilities ... and of performing all other acts which may be reasonably necessary to the administration and use" of the Park. The decoy bear was within this grant between the low watermark and the 1710–contour. Both agencies agree that NPS's broad rights in TVA's land include the right to exercise police powers to protect Park resources. Congress' approval of NPS' protection of federal lands owned by other agencies, as well as TVA's express grant of police and maintenance powers to NPS, demonstrates that the enforcement of

Park-related laws is fully consistent with TVA's rights. We hold therefore that TVA's custody of land within the Park does not constitute a "valid existing right[ ]" sufficient to exempt this area from enforcement of Park-related laws and regulations.

## C.

Congress created national parks in order to "conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1. NPS jurisdiction over the northern shore of Fontana Lake is necessary to protect Park animals that must pass through portions of the Park in TVA's custody that lie below the 1710–foot contour line in order to reach the lake water. Were we to hold that NPS cannot enforce Park laws on the north shore of Fontana Lake, hunters could easily circumvent the protections for Park wildlife by waiting for Park animals to approach the lake waters before shooting them. This would frustrate the purpose for which the national park system was established.

## III.

Stephenson was charged with unlawfully hunting bear on federally owned land within the statutory boundaries of the Park. This activity plainly occurred "within the limits" of the Park and therefore may be prosecuted under 16 U.S.C. § 403h–3. The district court's dismissal of the bill for lack of jurisdiction is

*REVERSED.*