OPINION
{¶ 1} Defendant-appellant, Cody Cannell, appeals the decision of the Butler County Area I Court denying his motion to dismiss charges of driving while under the influence of alcohol ("DUI") and other charges.
 {¶ 2} In the early hours of February 20, 2004, Miami University Police Officer Sharon Crouthers was traveling eastbound on Spring Street on the campus of Miami University while appellant was traveling westbound on Spring Street. Appellant went left of center, causing the officer to swerve to avoid being hit. The officer pulled appellant over. After failing field sobriety tests and exhibiting intoxication symptoms, appellant was arrested. He was charged with two counts of DUI in violation of R.C. 4511.19(A)(1) and (8), and one count each of marked lane violation, failure to wear a seatbelt, and underage possession of alcohol. It is undisputed that the arrest took place on the campus of the university.
 {¶ 3} Appellant moved to dismiss the charges on the ground that the officer did not have territorial jurisdiction to stop and arrest him on Spring Street because while Spring Street transverses the university campus, it is owned by the city of Oxford and not by Miami University. Following a hearing on the motion, the trial court overruled appellant's motion to dismiss. Appellant subsequently pled no contest and was found guilty as charged and sentenced accordingly. This appeal follows.
 {¶ 4} In a single assignment of error, appellant argues that the trial court erred by denying his motion to dismiss. Appellant argues that (1) because Spring Street is a street owned by the city of Oxford and not by Miami University, it is therefore not "within the limits of the university" for purposes of R.C. 2935.03(A)(1); (2) the officer arrested him in violation of a Law Enforcement Assistance Agreement entered between the city of Oxford and Miami University; and (3) the state's interest in making a "full custodial" extraterritorial arrest was "outweighed by the serious intrusion upon the liberty and privacy [arising] out of the arrest." For the following reasons, we affirm the trial court's decision.
 {¶ 5} Appellant first argues that the officer did not have statutory territorial jurisdiction to arrest him because Spring Street, a street owned by the city of Oxford and not by Miami University, is not "within the limits of the university" for purposes of R.C. 2935.03(A)(1). For the reasons that follow, we find (and agree with the trial court) that ownership of Spring Street is irrelevant and that the officer had statutory territorial jurisdiction to arrest appellant.
 {¶ 6} Miami University is a public university authorized to appoint university law enforcement officers under R.C. 3345.04(B). A state university's authority to maintain law and order on campus is governed by R.C. 3345.21 which states in part that: "[t]he board of trustees of any college or university * * * shall regulate the use of the grounds, buildings, equipment, and facilities of such college or university and the conduct of students, staff, faculty, and visitors to the campus so that law and order are maintained[.] * * * The board of trustees shall provide for the administration and enforcement of its rules and may authorize the use of state university law enforcement officers * * * toassist in enforcing the rules and the law on the campus of the college or university." (Emphasis added.)
 {¶ 7} R.C. 2935.03(A)(1), in turn, states that "a state university law enforcement officer appointed under [R.C.] 3345.04 * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the * * * university * * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township."
 {¶ 8} R.C. 2935.03(A)(1), therefore, confers upon a university police officer the power to arrest upon university property a person found violating a state law or municipal ordinance. See State v. Grubb (1993),82 Ohio App.3d 187. We agree with the trial court that R.C. 2935.03
makes no reference to ownership of the property, but rather, only to the geographical location of the violation. As the trial court aptly noted, "a reading of [R.C.] 2935.03(A)(1) reveals that there are any number of specialized police forces [such as veterans home police officers or police officers employed by a port authority, a metropolitan housing authority, or a regional transit authority] with authority to arrest and detain within the limits of their particular area. * * * No mention is made in [R.C. 2935.03(A)(1)] that those arrests can be made only if the property is owned or not owned by any particular agency." We therefore find that ownership of a property is not required under R.C. 2935.03(A)(1) to create jurisdiction. Rather, the key issue for a university police officer's jurisdiction is where the violation occurs, not who owns the property where the violation may have occurred.
 {¶ 9} R.C. Chapter 2935 does not define the phrase "within the limits" of a university. Appellant claims that the "limits of the university" are solely limited to the grounds, buildings, equipment, and facilities which the university board of trustees is authorized to regulate and control under R.C. 3345.21. However, we agree with the trial court that R.C.3345.21 "states nothing about the `limits of the university' and is obviously designed to allow the university to enact rules and regulations regarding the conduct of persons who enter onto the grounds of the university. Nothing in this section prohibits police officers, whether they be state university or municipal, from enforcing state traffic laws."
 {¶ 10} Because the phrase "within the limits of the university" is not defined in the statute, it must be given its plain and ordinary meaning unless otherwise indicated. Ohio Assn. of Pub. School Emp. v. Twin ValleyLocal School Dist. Bd. Of Edn. (1983), 6 Ohio St.3d 178, 181. R.C. 1.42
provides that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Webster's defines "limit" as "(1)(a) a geographical or political boundary: BORDER, FRONTIER; (b) the place or area enclosed within a boundary; and/or (2) (a) something that bounds, restrains, or confines." Webster's Third New International Dictionary (1993) 1312. A "boundary," in turn, is defined as "something that indicates or fixes a limit or extent: something that marks a bound." Id. at 260. "Within" is defined as "inside the bounds of a place or region." Id. at 2627.
 {¶ 11} Giving the phrase its plain and ordinary meaning and in light of the foregoing definitions, we find that "within the limits of the university" refers to the geographical territory of the university, that is, everything within the boundaries of the university, including roads and streets that transverse the university campus. See Free Ent. CanoeRenters Assoc. of Missouri v. Watt (C.A.8, 1983), 711 F.2d 852 (phrase "within the boundaries" in National Park Service regulation means everything within outer boundaries of Ozark National Scenic Riverways, including state and county roads; regulation makes no distinctions on basis of ownership); United States v. Stephenson (C.A.4, 1994), 29 F.3d 162
(language "within the limits of said Park" refers to statutory boundaries of Park, not to property ownership lines). It follows then that Spring Street is "within the limits" of Miami University for purposes of R.C.2935.03(A)(1), regardless of whether the street is owned or maintained by the city of Oxford. See State v. Jackson (Nov. 6, 1990), Franklin App. No. 90AP-457 (finding that a R.C. 2935.03[D] pursuit took place within the jurisdiction of the Ohio State University where although the arrest took place outside the geographic boundaries of the Ohio State University, the university police officers began their pursuit on 12th Avenue "well within the university boundaries").
 {¶ 12} Because Officer Crouthers stopped and arrested appellant on Spring Street on the campus of Miami University, therefore within the limits of the university pursuant to R.C. 2935.03(A)(1), we find that the officer had statutory territorial jurisdiction under R.C. 2935.03 to arrest him.[1]
 {¶ 13} Next, appellant argues that the officer arrested him in violation of a Law Enforcement Assistance Agreement (the "Agreement") entered between the city of Oxford and Miami University. In denying appellant's motion to dismiss, the trial court found that Officer Crouthers had authority under the Agreement (and a memorandum of understanding) to stop appellant.
 {¶ 14} The Agreement was entered between the city and the university in 1996. Then, in 1998, in accordance with the Agreement, the city and the university entered into a written memorandum of understanding (the "Memorandum") setting forth general operating provisions.
 {¶ 15} Paragraph 1 of the Agreement provides that "the parties' police department will assist each other in law enforcement activities, following the procedures set forth in this Agreement and in any Memorandum of Understanding[.] Assistance shall be provided in two ways; by response to requests for assistance; and by direct response to incidents involving bodily injuries or substantial property damage." Paragraph 3 of the Agreement, in turn, provides in part that "[i]f any officer of either jurisdiction observes any incident in the other jurisdiction involving bodily injuries or substantial property damage, then such officer shall be authorized to respond to such incident with the full authority of an officer of the other jurisdiction including the authority to make arrests." The Agreement does not define or list incidents involving bodily injuries or substantial property damage.
 {¶ 16} Paragraph B of the Memorandum provides that: "[p]otentially life-threatening and/or substantial property damage traffic violations, within the City of Oxford and properties of Miami University, shall be the responsibility of both the Oxford Police and the Miami University Police. An officer witnessing potentially life-threatening or substantial property damage traffic violations outside the officer's jurisdiction is empowered to stop the violator. The witnessing officer will then notify the on-duty supervisor of the responsible department and advise of the nature of the incident, its location and the witnessing officer's unit number."
 {¶ 17} Paragraph C of the Memorandum, in turn,[2] provides that "[a] University officer witnessing a potentially life-threatening or substantial property damage traffic violation is empowered to stop the violator and take appropriate action if the violations occur on any street defined in Paragraph H." Paragraph C lists DUI offenses in violation of R.C. 4511.19 as life-threatening and/or substantial property damage offenses. Spring Street is listed in Paragraph H which also provides that "University police shall respond directly to the specifically defined incidents and/or violations as referred to in paragraphs B and C."
 {¶ 18} Upon reviewing the Agreement and the Memorandum, we find that they grant a university police officer the authority to stop and arrest a violator whenever the officer witnesses a life-threatening or substantial property damage traffic violation, such as a DUI offense. In the case at bar, because the officer observed a life-threatening or substantial property damage traffic violation, the officer had the authority to stop and arrest appellant after she observed his impaired driving and after he failed the field sobriety tests.
 {¶ 19} Finally, appellant argues that the state's interest in making a "full custodial" extraterritorial arrest was "outweighed by the serious intrusion upon the liberty and privacy [arising] out of the arrest." Appellant cites State v. Fitzpatrick, 152 Ohio App.3d 122, 2003-Ohio-1405, in support of his argument.
 {¶ 20} In Fitzpatrick, the defendant appealed his DUI conviction on the ground that the officer's extraterritorial stop of his vehicle and the defendant's subsequent arrest violated the reasonableness requirement of the Fourth Amendment. The Sixth Appellate District agreed, stating: "The facts in the instant case are distinguishable from [State v.Weideman, 94 Ohio St.3d 50, 2002-Ohio-1484.] [T]he officer in Weideman
observed defendant's vehicle leave the road twice and twice drive left of center before he conducted an investigative stop. Clearly, the defendant was an immediate danger to other motorists. As stated in Weideman, `[T]he government's interest in promoting public safety by stopping and detaining persons driving erratically outweighs the momentary restriction of the driver's freedom.'
 {¶ 21} "In the instant case, Officer Snow merely observed [Fitzpatrick]'s vehicle `moving kind of slow.' There is no testimony suggesting that [Fitzpatrick's] manner of driving presented a danger to other motorists. * * * [T]here is no evidence that [Fitzpatrick's] possession of illegal plates, a fourth-degree-misdemeanor violation, presented an imminent safety danger to other motorists. Given the lack of urgency, we see no reason why Officer Snow could not have alerted Toledo police to the general location of [Fitzpatrick's] vehicle and allowed officers with jurisdictional authority to stop [Fitzpatrick].
 {¶ 22} "We conclude that the government's interest in making an extraterritorial stop and arrest for a fourth-degree-misdemeanor violation is minimal and outweighed by the serious intrusion upon a person's liberty and privacy that necessarily arises out of a stop and arrest. Therefore, Officer Snow's action in making an extraterritorial stop of [Fitzpatrick's] vehicle violates the reasonableness requirement of the Fourth Amendment." Id. at ¶ 12, 14-15.
 {¶ 23} In the case at bar, appellant drove left of center, causing Officer Crouthers to swerve to avoid being hit. Clearly, appellant was an immediate danger to other motorists. See Weideman, 94 Ohio St.3d at 506
(the state's interest in protecting the public from a person who drives an automobile in a manner that endangers other drivers outweighs a defendant's right to drive unhindered. These two factors demonstrate that [an officer's] violation of R.C. 2935.03 does not rise to the level of a constitutional violation). Although Weideman did not involve an extraterritorial arrest, but only an extraterritorial stop, other courts have extended the Weideman holding to extraterritorial arrests regardless of whether the officer called for assistance from someone with jurisdiction. See State v. Pierce, Montgomery App. No. 19926, 2003-Ohio-7244; State v. Orihel, Athens App. No. 01CA33, 2002-Ohio-411; and State v. Annis, Portage App. No. 2001-P-0151, 2002-Ohio-5866. We therefore find that the Fitzpatrick holding does not apply to the case at bar and that appellant's extraterritorial stop and arrest were proper under Weideman.
 {¶ 24} In light of all of the foregoing, we find that the trial court did not err by denying appellant's motion to dismiss. Appellant's assignment of error is accordingly overruled.
 {¶ 25} Judgment affirmed.
 {¶ 26} Walsh, P.J., and Bressler, J., concur.
[1] We note that the trial court also found that there could be concurrent jurisdiction between a city and a state university. Although we need not consider this issue since we found that the university officer had jurisdiction under R.C. 2935.03(A)(1) to arrest appellant, we note that forms of concurrent jurisdiction can exist at times. See R.C.2935.03(E); McConnell v. Columbus (1961), 172 Ohio St. 95. As our analysis under appellant's second issue shows, concurrent jurisdiction does indeed exist between the city of Oxford and Miami University under a Law Enforcement Assistance Agreement and a memorandum of understanding.
[2] We note that although the cited paragraph is unlettered in the Memorandum, unlike the preceding and following paragraphs of the Memorandum, a review of the Memorandum clearly indicates that the paragraph should be identified as paragraph C, especially when read in context with paragraph H of the Memorandum.